UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Sidhartha Misra, Jane Thibeauz, Elizabeth Wolf, Brian Johnson, Rebecca Gleffe, individually, and on behalf of others similarly situated,**<br><br>　　　　　**Plaintiff(s),**<br><br>　　v.<br><br>**Decision One Mortgage Company and HSBC Finance Company,**<br><br>　　　　　**Defendant(s).**<br>_____ | **CASE NO. SA CV 07-0994 DOC (RCx)**<br><br>**O R D E R GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** |

　　　Before the Court is Plaintiffs' Sidhartha Misra, Jane Thibeaux, Elizabeth Wolf, Brian Johnson, and Rebecca Gleffe, Motion seeking an Order for Preliminary Approval of the Settlement Agreement (the "Motion"). Plaintiff's Motion was brought individually and on behalf of others similarly situated. After considering the moving, opposing, and replying papers thereon, as well as oral argument, and for the reasons set forth below, the Court hereby GRANTS Plaintiffs' Motion for Preliminary Approval of Settlement Agreement.

## I. BACKGROUND

　　　Plaintiffs Sidartha Misra ("Misra"), Elizabeth Wolf ("Wolf"), and Brian Johnson

("Johnson") (collectively, "Plaintiffs") are former employees of Defendants Decision One Mortgage Company ("Decision One") and HSBC Finance Corporation ("HSBC") (collectively, "Defendants"). HSBC is the parent company of Decision One. Plaintiffs formerly had the job titles of "Inside Account Executive" or "Account Manager III."

More specifically, Misra, a resident of California, was employed from September 2006 through January 2007 as an Inside Account Executive. Misra worked in Brea, California. Wolf, a resident of Missouri, was employed from June 2002 through October 2006. Wolf became an Account Manager III in the middle of 2003, and worked in this position until the end of her employment with Defendants. Wolf worked in Defendants' branch in St. Louis, Missouri. Johnson, a resident of Indiana, was employed from May 2003 through February 2007. Johnson became an Account Manager III in March 2006, and worked in this position until the end of his employment with Defendants. Johnson worked in Defendants' branch in Indianapolis, Indiana. Plaintiffs allege that during their respective employment Defendants failed to pay them, or others similarly situated, overtime compensation.

Decision One Mortgage Company was a wholesale residential mortgage lender, which shut down all of its mortgage origination operations shortly after the commencement of this action in 2007. Until its closing, Decision One had up to 22 branches nationwide.

Plaintiffs filed a complaint against Defendants on August 28, 2007. On February 13, 2008, Plaintiffs filed a Notice of Motion and Motion for Conditional Class Certification. The Court granted Plaintiff's Motion for Conditional Class Certification under the Fair Labor Standards Act on June 23, 2008. This certification was required to show that Defendants were victims of a common policy or plan that violated the law.

In their complaint, Plaintiffs alleged that Defendants misclassified Plaintiffs with the job title of 'Inside Account Executive' and 'Account Manager III' as exempt from federal and state overtime laws, and that Defendants misrepresented to those employees that they were exempt and not entitled to overtime pay. Plaintiffs also allege that, although Defendants properly classified employees with the job title of 'Account Manager III' as non-exempt, they nonetheless failed to pay full overtime compensation for the hours worked in excess of forty hours a week.

2

In February 2009, Plaintiffs executed a settlement agreement and on March 2, 2009, Plaintiffs moved for Settlement Approval of Joint Motion for Preliminary Approval of Settlement. The proposed settlement resolves the claims of 184 "Opt-In Plaintiffs" and up to 129 other "Rule 23 class members" nationwide. Additionally, there are 12 plaintiffs who have opted into the class, but were not employed as Account Manager III's or Account Executives. The 184 "Opt-in Plaintiffs" have received notice of the class action and have already "opted in" as required under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §216(b). The "Rule 23 Plaintiffs" have not yet opted into the class and will not be bound by the settlement should they choose not to opt in.

In the instant Motion, the parties seek preliminary approval of the settlement agreement. Before the settlement agreement can be preliminarily approved, the Court must grant class certification for a collective class. The collective class would be made of all persons who are or have been employed by Defendants as the equivalent of an Inside Account Executive or Account Manager III, at any time within the United States between August 23, 2004 and August 23, 2007.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) generally requires the Court to approve a class action settlement and requires notice of settlement to all class members. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The first step is to assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997)).

The FLSA prohibits an employer from failing to pay overtime wages to an employee. 29 U.S.C. § 207(a). The statute provides that an aggrieved employee may bring a collective action on behalf of herself and other employees "similarly situated" based on an employer's failure to pay such wages. *Id.* § 216(b). Potential collective action plaintiffs must "opt-in" to the action by filing a written consent with the court. *See id.* (stating that "[n]o employee shall be a party

3

plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); *Does I through XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1064 (9th Cir. 2000). If similarly situated employees do not "opt-in" to the collective action, these employees are not bound by any judgment reached in the action. *Leuthold v. Destination Am., Inc*., 224 F.R.D. 462, 466 (N.D. Cal. 2004). The second step in this approach occurs after discovery is complete, at which time the defendants may move to decertify the class. *Id*. at 467.

A party seeking class certification must demonstrate the following prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A district court must engage in a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23(a). *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1233 (9th Cir. 1996) (quoting *In re Am. Med. Sys*.,75 F.3d 1069, 1079 (6th Cir. 1996)).

A party must also demonstrate: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b).

After the class is satisfied, district courts must evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable," and, in doing so, the court "must pay undiluted, even heightened, attention to class certification requirements." *Id.* (internal quotation marks and citations omitted). To determine if a settlement is fair, some or all of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the

reaction of class members to the proposed settlement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Staton*, 327 F.3d at 959. To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out. *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

## III. DISCUSSION

For the reasons stated below, the Court certifies the Collective Class as presently defined. The Collective Class includes any employees of Decision One Mortgage Company working as the equivalent of Inside Account Executives prior to November 2006 and those working as Fully-Qualified Inside Account Executives outside of California and Illinois after November 2006 and the equivalent of Account Manager III's. Plaintiff Misra, hired as an account executive in September 2006 and classified as a salaried, exempt employee, may serve as a class representative of those account executives improperly classified as exempt. Additionally, the Court finds, based on the evidence before it, that the proposed settlement is fair and reasonable taking into account the potential award, risks of future litigation, and potential delay. Accordingly, the Court GRANTS preliminary approval of the settlement.

**A. Collective Class Certification**

The FLSA provides that an aggrieved employee may bring a collective action on behalf of herself and other employees "similarly situated" based on an employer's failure to pay wages. 29 U.S.C. § 216(b). The second step in this approach occurs after discovery is complete, at which time the defendants may move to decertify the class. *Leuthold*, at 467. If the class is not decertified, the party seeking class certification must demonstrate numerosity, commonality, typicality, and adequacy of the legal representation. *Valentino*, 97 F.3d at 1233. The Collective Class in this case meets all of the requirements.

**1. FLSA Class Certification**

The Court previously found that the Plaintiffs satisfied the modest factual showing that is

required with respect to the FLSA Certification Motion. Thus, the Plaintiffs were granted conditional certification of the class.

The Court granted the FLSA Certification Motion with respect to the Account Manager III's. Plaintiffs' declarations were sufficient to establish a modest factual showing to support allegations of consistent treatment of Account Manager III's as exempt employees, Defendants' failure to pay Account Manager III's overtime for hours worked over forty, Defendants' failure to provide a method for Plaintiffs to keep track of hours, and similar treatment between various Account Manager III's.

The Court also granted the FLSA Certification Motion as to employees working as Inside Account Executives prior to November 2006 and those working as Inside Account Executives outside of California and Illinois after November 2006. Plaintiff Misra, hired as an Account Executive in September 2006 and classified as a salaried, exempt employee, has been permitted to serve as a class representative of those account executives improperly classified as exempt from overtime pay.

Had this case proceeded to trial, Defendants would have had the opportunity to move to decertify the class. Because the case will not reach trial, the motion to decertify under FLSA is moot. Therefore, the Court will address certification of the class under Fed.R.Civ.Pro. Rule 23.

**2. Numerosity**

Numerosity is shorthand for the requirement that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Classes with 35-40 persons or more usually meet this requirement. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982)(39 individuals likely sufficient on basis of number alone), *vacated on other grounds*, *County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S. Ct. 35 (1982); *see also e.g. Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1997) (numerosity requirement met with approximately 110 potential class members); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999)(numerosity requirement met with between 100 and 150 potential class members).

The proposed class includes 184 Opt-In plaintiffs. The class also includes 129 people

that have not yet opted in and 37 others that have filed consent forms. The numerosity requirement has been met here. In addition, this Class is ascertainable because the Class members were employed by Decision One and can be determined from employment records.

### 3. Commonality

Commonality exists where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). This requirement is met by shared legal issues or a common core of facts. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the proposed Class members' claims stem from the same source: the allegation that they were improperly classified as Account Managers III and Account Executives, working exempt. All members of the class were employees of Defendants and worked either as an Account Executive or an Account Manager III. None of these plaintiffs customarily or regularly worked on the road or in broker offices. Additionally, all plaintiffs claim that during their respective employment Defendants failed to pay them overtime compensation. Because Plaintiffs were all employed by Defendants and allege the same claims against Defendants, their claims are common within the class. Accordingly, the proposed class meets the commonality requirement.

### 4. Typicality

Typicality means that the class representative's claims must be typical of the class – *i.e.*, "reasonably coextensive with those of absent class members; [though] they need not be substantially identical." *Hanlon*, *supra* (defining the requirements of Fed. R. Civ. P. 23(a)(3)). In this case, the representatives claim they were not paid for overtime while working for the Defendants. This claim is typical of the class because all of the class members are alleging Defendants failed to pay them overtime. Under the rule's permissive standards, the narrow focus of the representatives' claims and the class members' claims are sufficient to meet the typicality requirement.

### 5. Adequacy of Representation

An adequate representative is one who "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee*, 311 U.S. 32, 43, 61 S. Ct. 115 (1940). To

satisfy this requirement, class counsel must be "qualified, experienced and generally able to conduct the litigation." *Social Servs. Union, Local 535 v. County of Santa Clara*, 509 F.2d 944, 947 (9th Cir. 1979) (footnote omitted). A representative is adequate where (a) there is no conflict of interest between the representative and its counsel and absent class members, and (b) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, *supra* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

### i. Counsel Must Be Qualified, Experienced and Able to Conduct the Litigation

Class counsel are well regarded and have considerable experience. Counsel's firm is a qualified firm with experience in class action and wage hour litigation. The firm has been representing employees almost exclusively for 15 years and a large portion of the practice is concentrated on representing employees in class and collective actions. Counsel has successfully opposed numerous motions filed by Defense counsel throughout the course of this action. Additionally, counsel have met the conditions for class certification outlined by this Court, granting conditional class certification. Counsel are surely competent to handle the remainder of this case on behalf of named Plaintiffs and absent class members. Accordingly, the adequacy of representation requirement has been met.

### ii. Conflict of Interest

All of the Class members, Opt-In and Rule 23, who submit timely claims will receive a pro-rata portion of the settlement fund based on the number of weeks employed during the relevant time frame that they worked as an Account Executive or Account Manager III. The two groups do not have adverse interests and one group will not receive a larger slice of the settlement than another group. Thus, there are no issues with respect to "settlement allocation." *Hanlon*, 150 F.3d at 1020 (holding class counsel could not provide adequate representation to two groups with clashing interests). Additionally, the settlement is reasonably "narrowly circumscribed," and any class member who wishes to "opt-out" of the settlement may do so. *See id.* at 1021.

The terms of the settlement state that Plaintiff's counsel shall receive 25% of the

settlement amount, plus costs. This amounts to, $1,323,000– almost 26.5% of the total settlement. An additional $5,000 enhancement will be awarded to the named Plaintiffs. This enhancement is considered unobjectionable where class representatives have invested significant time in assisting prosecution of the case. *Manual for Complex Litigation* § 21.62 n. 971 (4th ed. 2004); *Staton*, 327 F.3d 938 at 977 (identifying factors to be considered in approving enhancements to named plaintiffs as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation") (citing *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)). Relative to the award given to the average plaintiff, between $12,086.00 and $21,151.00, and the overall settlement of $5,000,000, the Court finds a $5,000 enhancement to be fair.

### iii. Counsel Must Pursue the Action Vigorously on Behalf of the Class

This case has labored on for over a year and a half. Counsel has successfully opposed several of Defendants' lengthy and exhaustive motions and has pursued this claim despite numerous discovery obstacles created by Defendants' obstinance. Despite being denied information regarding putative class members' relationship with the Defendants, counsel has managed to include more than 300 putative class members. The Court finds that counsel has pursued this action vigorously on behalf of the Class.

Because the Court finds that counsel is qualified and without conflicts of interest between class members and has pursued the action vigorously on behalf of the class, the Court also finds that the representation of Plaintiffs is adequate.

### 6. Late Return of Consent Forms

The Court will allow the addition of two class members to the Opt-In class who returned opt-in consent forms after the stated deadline. The two class members are either Account Manager III's or Account Executives alleging they were not paid for overtime worked. Therefore, the two additional class members meet the requirements of the class. The parties have agreed to the inclusion of these two Plaintiffs in the settlement and the Court finds no

9

reason why they should not be included.

### 7. The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

Having satisfied all of the Rule 23(a) requirements, Plaintiffs' class may be certified as presently defined. Plaintiffs have met the class requirements of numerosity, commonality, typicality, and adequacy of representation. The Plaintiffs have similar claims and would receive similar remedies from the action against Defendants. The damages are not speculative and have been determined according to the time in weeks employed by Defendants. Therefore, Plaintiffs have obtained an "Opt-In Class" and a "Rule 23 Class."

## B. Settlement Agreement

The Court finds, based on the evidence before it, that the proposed settlement is fair and reasonable taking into account the potential award, risks of future litigation, costs, and potential delay. Accordingly, the Court hereby GRANTS preliminary approval of the settlement.

### 1. Strength of Plaintiffs' Case

It can be difficult to ascertain with precision the likelihood of success at trial. The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, *See Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982), and to the extent courts assess this factor, it is to "determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case." *Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995).

The Plaintiffs have alleged a claim that those who reside in California are entitled to an extra 0.1 weeks worked due to meal breaks and rest periods an employer is required to provide under California law. However, the Plaintiffs have not alleged any facts, or even the relevant statute, in asserting that the California Plaintiffs are entitled to more damages than the other members of the class. As the settlement pertains to this particular claim for failure to provide rest periods and meal breaks to California class members, the Court cannot find that Plaintiffs have a strong enough case to justify an increase in damages.

With regard to the remainder of the settlement agreement, there is nothing present to suggest that the instant claim for overtime pay is so weak that it should not be settled.

Accordingly, this factor presents no obstacle to preliminary approval of the proposed settlement.

**2. Risk, Expense, Complexity, and Duration of Future Litigation**

There are always significant elements of risk, expense, complexity, and duration when the possibility of litigation is at play. In this case, proceeding to trial would be costly and would substantially defer resolution of the case. Thus, in light of the inherent burden, expense, and uncertainty of continuing litigation, this factor encourages settlement in this case.

**3. Amount of Settlement**

The settlement amount is $5,000,000. The average award to each class member will be between $12,086.00 and $21,151.00. The settlement is designed to provide each participating Opt-In class member a designated percentage of the fund based on the number of work weeks each class member worked as an Account Executive or Account Manager III during the class period. The Rule 23 class members have not yet opted in, but will be included in the settlement and receive a base amount of the claim, which may be increased depending on the number of replies received. The Rule 23 Plaintiffs will receive the same proportional allocation as the Opt-In Plaintiffs. Additionally, each of the 12 Plaintiffs who opted in but were not Account Executives or Account Manager III's will receive a $2,000 award for their claims.

The named Plaintiffs will receive $5,000 in enhancements for their role in this case. This award is modest compared to the overall settlement of $5,000,000. These Plaintiffs provided assistance in prosecuting the case and took on personal financial risk if the case did not prevail. It is appropriate for courts to award enhancements to representative plaintiffs who undertake the risk of personal or financial harm as a result of litigation. Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent nonlegal but essential case-specific expenses. *See In re Continental Illinois Sec. Litigation*, 962 F.2d 566, 571 (7th Cir. 1992) ("A class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.")

The proposed attorneys fees are approximately 25% of the settlement amount, plus costs. The benchmark for such fees is generally 25% of the common fund. *See Torrisi v. Tuscon*

*Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Ellmore v. Ditech Funding*, No. SA CV 01-93 DOC (Anx). In the instant case, there are no facts indicating that the Court should stray from 9th Circuit's 25% benchmark. Accordingly, the Court finds Plaintiffs' counsel is entitled to 25% of the common fund plus costs.

The Court finds that the settlement sum is reasonable and adequate, given the uncertain outcome and available defenses. Furthermore, no one will be prejudiced by the settlement because any class member may preserve individual rights by refraining from opting into the class.

### 4. Investigation and Discovery

Although it is usually desirable for full discovery to have taken place to ensure the parties are making an informed decision, where there has been sufficient information sharing and cooperation in providing access to necessary data, the settlement may be fair and adequate. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). This case settled early in the proceedings. However, the parties to the case engaged in over a year of litigation. Defendants produced over 15,000 pages of discovery documents and Plaintiffs took one deposition. Plaintiffs included over 30 declarations in its motion for conditional class certification and Defendants produced over 45 exhibits. Defendants eventually provided information regarding class members' rates of pay and dates of employment. This data was sufficient to estimate damages for the class. Therefore, the Court finds sufficient discovery took place.

### 5. Experience and Views of Counsel and Reaction of Class Members

The Motion has been filed as a joint Motion, and there is no evidence of objections from Class members. This is not unexpected, given that the parties have not yet provided formal notice to members of the putative class. To the extent that there are further objections after notification is provided to all Class members, the Court will seriously consider them at the final settlement hearing. Furthermore, Plaintiffs' counsel, who are experienced and well informed on the issues, view the proposed settlement agreement as a fair and reasonable compromise. Accordingly, the Court finds the views of counsel and reaction of class members sufficient.

### 6. Fraud or Collusion

1   The Court finds no evidence of fraud or collusion.  The parties negotiated the settlement
2   at arms length between experienced counsel representing the interests of the plaintiffs and the
3   defendant. The Court thereby concludes that the settlement was freely and fairly reached.  *See*
4   *Newberg on Class Actions* § 11.51 (4th ed. 2002).

5   When considered together, these factors support preliminary approval of the proposed
6   class action settlement under Rule 23(e) as potentially "fundamentally fair, adequate, and
7   reasonable."

### C. Distribution of Settlement Notices

The proposed method of distribution of the settlement notices is by mail.  Defendant ostensibly has personal information on the class members.  Defense Counsel will provide Plaintiffs' Counsel with a list of all settlement class members.  Furthermore, the Claims Administrator will take appropriate steps to ensure it uses the best available address by using the National Change of Address database or the equivalent to obtain forwarding addresses prior to mailing and using appropriate skip tracing to maximize the probability that the Notice and Claim Forms will be received by all Class members via U.S. Mail.  Members will have 30 days to respond to the notice.  This is the "best notice that is practicable under the circumstances." Fed.R.Civ.Pro. 23(c).

The proposed Notices provide a fair and accurate description of the settlement.  As required by Rule 23(c), they inform class members of their right to object to the settlement. Fed.R.Civ.Pro. 23(c)(2).  The settlement offer and release includes the release that will be binding on all class members.  The respective notices inform recipients that the settlement is binding upon them unless they opt out.   The forms will provide detailed information, which will permit each Class member to make an informed decision about whether to opt out, submit a Claim Form, or take other action.

The parties will include in the settlement agreement a proposed Rule 23 Notice and Claim Form, as well as a proposed Notice of Settlement and Settlement Offer and Release.  As outlined above and in the settlement agreement, Plaintiffs' Counsel will first distribute the Rule 23 Notice to California and Pennsylvania Class Members.  Class Members have the opportunity to return a

claim form, object to the settlement or opt out of the settlement. The notice will include an approximate claim amount for Rule 23 class members. Plaintiffs' Counsel will then distribute the Notice of Settlement and Settlement Offer and Release to Opt-in Plaintiffs. Each Opt-in Plaintiff will have the opportunity to accept the settlement offer or reject the settlement offer, thereby opting out or withdrawing from the case.

### C. Final Approval Hearing

Within 7 days from date of this Order Class Counsel will mail Notice of Settlement of Class Action and Claim Form to Rule 23 Class Members (April 20, 2009). The Deadline for receipt by the Class Counsel of Rule 23 Class Members' claim forms, objections to the settlement, and opt-out notices shall be 30 Days From Date of Mailing Rule 23 Notice (May 20, 2009). Class Counsel is to provide Claim Forms and Proposed Allocation to Defendants 35 Days From Date of Mailing Rule 23 Notice (May 25, 2009). The deadline for Defendants to dispute Claim Forms and accept the Proposed Allocation shall be 15 Days After Class Counsel Provides Defendants With Claim Forms and Proposed Allocation (not later than June 9, 2009). Class Counsel will mail Notice of Settlement To Opt-In Plaintiffs and Settlement Offer and Release 22 Days After Class Counsel Provides Defendants With Claim Forms and the Proposed Allocation (not later than June 16, 2009). The deadline for Class Counsel to receive acceptances, rejections, or withdrawals shall be 45 Days After Class Counsel Mails Notice Of Settlement to Opt-In Plaintiffs and Settlement Offer and Release (July 31, 2009). The Parties shall return before this Court on August 24, 2009 to seek final approval of this Settlement Agreement.

## IV. OUTCOME

For the reasons set forth above, the Court finds that (1) the class is certified for settlement purposes, (2) the proposed settlement is preliminarily approved, and (3) the parties are directed to distribute the Notice, Claim, and Exclusion forms according to the manner described in the stipulated settlement.

Further the Court hereby SPECIFIES the following Objection Procedure:

> Any Class Member may appear at the Final Approval Hearing

and show cause why the Court should not approve the Settlement and dismiss the Action with prejudice as to Defendants, and may appear at the hearing to support or oppose Plaintiffs' Counsel's application for expenses and costs provided, however, that no Class Member shall be heard unless his, her or, its objection or opposition is made in writing, signed by each individual member of the Class so objecting, and is filed, together with any papers or briefs in support of such objections, with the Court <u>on or before June 9, 2009</u>. All such written objections and papers shall be copied to Plaintiffs' Counsel and counsel for Defendants, by first-class mail, postage prepaid, <u>on or before June 9, 2009</u>.

The objection shall include: (i) the complete name and residence or business address of the individual Class Member so objecting (giving the address of any lawyer who represents the Class Member is not sufficient); (ii) a statement, signed under penalty of perjury by the objecting Class Member; and (iii) each ground for comment or objection and any supporting papers the Class Member desires the Court to consider.

The Court hereby SETS the following Schedule for Final Approval:

Class Counsel will mail Notice of Settlement of Class Action and Claim Form to Rule 23 Class Members on April 20, 2009. The Deadline for receipt by the Class Counsel of Rule 23 Class Members' claim forms, objections to the settlement, and opt-out notices shall be May 20, 2009. Class Counsel is to provide Claim Forms and Proposed Allocation to Defendants on May 25, 2009. The deadline for Defendants to dispute Claim Forms and accept the Proposed Allocation shall be June 9, 2009. Class Counsel will mail Notice of Settlement To Opt-In Plaintiffs and Settlement Offer and Release on

June 16, 2009.  The deadline for Class Counsel to receive acceptances, rejections, or withdrawals shall be July 31, 2009.  The Parties shall return before this Court on August 24, 2009 at 8:30 a.m. to seek final approval of this Settlement Agreement.

IT IS SO ORDERED.

DATED: April 13, 2009

*David O. Carter*
DAVID O. CARTER
United States District Judge